

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, Third Floor*
*New York, New York 10007*

July 25, 2017

**By ECF and Hand Delivery**
The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

       Re:    *Vullo v. Office of the Comptroller of the Currency*, 17 Civ. 3574 (NRB)

Dear Judge Buchwald:

       This Office represents defendants the Office of the Comptroller of the Currency and Keith A. Noreika, Acting United States Comptroller of the Currency (together, "OCC" or "defendants") in the above-referenced action. Pursuant to Rule 2B of Your Honor's Individual Practices, we write respectfully to request a pre-motion conference in connection with OCC's anticipated motion to dismiss the Complaint ("Compl.") (ECF No. 10) filed by plaintiff Maria T. Vullo, Superintendent of the New York State Department of Financial Services, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 2B provides that "[t]he filing of a request for a pre-motion conference to dismiss prior to answer stays the time for the filing of an answer until after the conference is held or until further order of the Court."

       Plaintiff brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, challenging OCC's purported final decision to issue "Special Purpose National Bank Charters" (or "fintech charters"), pursuant to 12 C.F.R. § 5.20(e)(1), to institutions that conduct non-fiduciary activities and do not receive deposits. *See* Compl. ¶¶ 21-39. Plaintiff argues that OCC's purported final decision will harm New York State's ability to regulate its financial markets, exceeds OCC's statutory authority, and violates the Tenth Amendment to the Constitution by removing institutions that receive fintech charters from the ambit of state regulation. *See id.* ¶¶ 40-62.

       The Complaint is subject to dismissal for at least three reasons. First, plaintiff lacks standing to bring its claims because New York has not "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the fourteen years since Section 5.20(e)(1) was promulgated, OCC has never issued a charter pursuant to it. And while, as plaintiff notes, OCC has publicly contemplated the possibility of issuing fintech charters under that regulation, *see* Compl. ¶¶ 28-39, those public

statements do not amount to a "final agency action" subject to challenge under the APA, *see* 5 U.S.C. § 704.  Indeed, as recently as July 19, 2017, Acting Comptroller Noreika made a public speech underscoring that the December 2016 "White Paper" on which plaintiff particularly relies, *see* Compl. ¶ 30, was not final, and that "OCC has not determined whether it will actually accept or act upon applications from nondepository fintech companies for special purpose national bank charters that rely on" Section 5.20(e)(1).  Accordingly, because there is no final agency action to review under the APA, and because any harm plaintiff can identify from OCC's actions to date is "conjectural or hypothetical," *Lujan*, 504 U.S. at 502, the Court lacks subject matter jurisdiction over plaintiff's claims, *see, e.g., Peoples Nat'l Bank v. OCC*, 362 F.3d 333, 337 (5th Cir. 2004) (no final agency action where bank "simply takes issue with the idea that" a new banking bulletin issued by OCC might limit the scope of OCC's review of appeals of examination ratings, to the bank's detriment).

Second, in the alternative, the Complaint fails to state a claim upon which relief may be granted because Section 5.20(e)(1) reflects OCC's reasonable interpretation of its statutory authority under the National Bank Act ("NBA") to regulate "the business of banking."  12 U.S.C. § 24 (Seventh).  OCC's interpretation of terms in the NBA is entitled to *Chevron* deference.  *See, e.g., Cuomo v. Clearing House*, 557 U.S. 519, 525 (2009).  Here, the text of the NBA leaves the meaning of the term "business of banking" ambiguous.  *See, e.g.,* 12 U.S.C. §§ 21, 26, 27(b)(1), 24 (Seventh), 27(a), 81 (using the term "business of banking," or similar terms, but not defining it); *see also NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Co.*, 513 U.S. 251, 257, 258 n.2 (1995) (deferring to OCC's interpretation that the phrase "incidental powers . . . necessary to carry on the business of banking" is an independent grant of authority providing agency with "discretion to authorize activities beyond those specifically enumerated"); *Independent Community Bankers Ass'n of South Dakota, Inc. v. Bd. of Governors of Federal Reserve System*, 820 F.2d 428, 438-40 (D.C. Cir. 1987), *cert. denied* 484 U.S. 1004 (1988) (deferring to OCC's decision under 12 U.S.C. § 24 (Seventh) to issue a limited purpose charter authorizing national bank to exercise only limited powers in order to comply with relevant state law and the Bank Holding Company Act).  Here, Section 5.20(e)(1) reasonably limits the issuance of charters to institutions that carry on at least one of three "core banking activities": the receipt of deposits, the payment of checks, or the lending of money.  68 Fed. Reg. 70126 (Dec. 17, 2003); *see* 12 U.S.C. § 36(j) (defining a national bank "branch" as a place of business "at which deposits are received, *or* checks paid, *or* money lent" (emphasis added)); *accord Clarke v. Securities Industrial Ass'n*, 479 U.S. 388, 406-09 (1987) (deferring to OCC's determination that "the general business of each national banking association" includes only the "core banking functions" identified in § 36(j)).  Thus, OCC's interpretation of the relevant statutory and regulatory language as authorizing it to employ Section 5.20(e)(1) to charter institutions that carry on at least one core banking function—even if they did not accept deposits—is reasonable and entitled to deference.

Finally, if OCC were ultimately to issue fintech charters pursuant to Section 5.20(e)(1), that decision would not run afoul of the Tenth Amendment.  It is well-established that the Supremacy Clause operates in concert with the NBA to displace state laws or state causes of action that conflict with federal law or that prevent or significantly interfere with national bank powers.  *See, e.g., Barnett Bank of Marion Co. v. Nelson,* 517 U.S. 25 (1996); *Franklin Nat'l Bank v. New York*, 347 U.S. 25 (1954).  As a federal regulation, Section 5.20(e)(1) preempts contrary state law.  *See, e.g., Smiley v. Citibank (South Dakota),* 517 U.S. 735 (1996); *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141 (1982).  A fintech chartered as a

national bank under Section 5.20(e)(1) therefore would be entitled to the protections of the NBA against state interference.  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."  *Watters v. Wachovia Bank, N.A*., 550 U.S. 1, 22 (2007).  "Regulation of national bank operations is a prerogative of Congress under the Commerce and Necessary and Proper Clauses."  *Id.*  Accordingly, issuance of fintech charters under Section 5.20(e)(1) would not run afoul of the Tenth Amendment.

Accordingly, we respectfully request that the Court schedule a pre-motion conference to discuss OCC's anticipated motion.  At that conference, the government would further request that the Court set a briefing schedule with respect to OCC's motion.

We thank the Court for its consideration of this letter.

                Respectfully submitted,

                JOON H. KIM
                Acting United States Attorney
                Southern District of New York

By:    /s/ Christopher Connolly
        CHRISTOPHER CONNOLLY
        Assistant United States Attorney
        Tel.: (212) 637-2761
        Fax: (212) 637-2786
        E-mail: christopher.connolly@usdoj.gov

cc:    *Plaintiff's counsel* (by ECF)