**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARIA T. VULLO, in her official capacity as Superintendent of the New York State Department of Financial Services,

                Plaintiff,

   v.

OFFICE OF THE COMPTROLLER OF THE CURRENCY and KEITH A. NOREIKA, in his official capacity as Acting U.S. Comptroller of the Currency,

                Defendants.

17 Civ. 3574 (NRB)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

 

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2761
Facsimile: (212) 637-2786

CHRISTOPHER CONNOLLY
Assistant United States Attorney
   —Of Counsel—

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

        A.        DFS Lacks Standing Because It Has Not Experienced an Injury-in-Fact ................2

        B.        DFS Fails to State a Claim Under the APA Because OCC Has Not Taken a "Final Agency Action"..........................................................................................4

        C.        DFS's Facial Challenge to Section 5.20(e)(1) is Untimely .....................................6

        D.        OCC's Interpretation of the National Bank Act is Entitled to Deference................7

        E.        DFS Fails to State a Valid Tenth Amendment Claim............................................10

CONCLUSION................................................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**

*Am. Ins. Ass'n v. Clarke*,
    865 F.2d 278 (D.C. Cir. 1988) ............................................................................................. 9

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................................ 4

*CTIA-The Wireless Corp. v. Fed. Communications Commission*,
    466 F.3d 105 (D.C. Cir. 2006) ............................................................................................. 7

*Citizens Against Casino Gambling in Erie County v. Chaudhuri*,
    802 F.3d 267 (2d Cir. 2015) ................................................................................................ 7

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987) ............................................................................................................ 9

*Delaware Dep't of Natural Resources & Environmental Control v. Fed. Energy Regulatory Comm'n*,
    558 F.3d 575 (D.C. Cir. 2009) ............................................................................................. 3

*Hull v. Burwell*,
    66 F. Supp. 3d 278 (D. Conn. 2014) .................................................................................... 3

*Independent Bankers Association of America v. Conover*,
    1985 U.S. Dist. LEXIS 22529 (M.D. Fla. 1985) ............................................................... 10

*Indep. Cmty. Bankers Ass'n of South Dakota, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*,
    820 F.2d 428 (D.C. Cir. 1987) ............................................................................................. 8

*Independent Insurance Agents of America, Inc. v. Clarke*,
    995 F.2d 731 (D.C. Cir. 1992) ............................................................................................. 9

*Independent Insurance Agents v. Ludwig*,
    997 F.2d 958 (D.C. Cir. 1993) ............................................................................................. 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 2, 3, 4

*Marchi v. Bd. of Coop. Educ. Servs.*,
    173 F.3d 469 (2d Cir. 1999) ................................................................................................ 4

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .................................................................................................. 2, 3

*N.Y. Civil Liberties Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008) ............................................................................................ 4

*Nat. Ass'n of Life Underwriters v. Clarke*,
    776 F. Supp. 1162 (D.D.C. 1990) ................................................................................... 9

*National State Bank of Elizabeth, N.J. v. Smith*,
    591 F.2d 223 (3d Cir. 1979) .......................................................................................... 10

*National State Bank of Elizabeth, N.J. v. Smith*,
    1977 U.S. Dist. LEXIS 18184 (D.N.J. Spet. 16, 1977) ................................................. 10

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995) ........................................................................................................ 8

*New York v. EPA*,
    350 F. Supp. 2d 429 (S.D.N.Y. 2004) ............................................................................. 6

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008) .............................................................................................. 5

*Simmonds v. INS*,
    326 F.3d 351 (2d Cir. 2003) ............................................................................................ 4

*Watters v. Wachovia Bank, N. A.*,
    550 U.S. 1 (2007) .......................................................................................................... 11

**STATUTES**

12 U.S.C. § 24 ......................................................................................................................... 7

12 U.S.C. § 27(a) ..................................................................................................................... 7

28 U.S.C. § 2401 ..................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

...

**REGULATIONS**

12 C.F.R. § 5.20(e)(1) ............................................................................................................... 1, 10

**PRELIMINARY STATEMENT**

Defendants the Office of the Comptroller of the Currency and Keith A. Noreika, in his official capacity as Acting Comptroller of the Currency (together, "defendants" or "OCC"), by their attorney, Joon H. Kim, Acting United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

As explained in OCC's opening brief (ECF No. 19) ("Gov't Br."), DFS lacks standing to pursue its claims because 12 C.F.R. § 5.20(e)(1), OCC's regulation addressing the chartering of special purpose national banks, has not caused DFS injury-in-fact, and OCC has not reached a final decision on whether it will offer 5.20(e)(1) Charters for special purpose national banks that do not take deposits. Accordingly, the allegations contained in the Complaint are not justiciable and there has been no reviewable final agency action that DFS can challenge under the Administrative Procedure Act ("APA"). Further, DFS's facial challenge to 12 C.F.R. § 5.20(e)(1) is untimely. And even if the Court reached the merits of OCC's authority to promulgate Section 5.20(e)(1) and issue charters to non-depository fintech companies, the Complaint should still be dismissed because Section 5.20(e)(1) represents a reasonable interpretation of OCC's statutory authority under the National Bank Act that is entitled to *Chevron* deference.

DFS's opposition brief (ECF No. 22) ("Pl. Br.") fails to rebut any of these points. At the threshold, DFS fails to point to an injury-in-fact sufficient to establish standing, and fails to demonstrate that this matter is ripe for adjudication, particularly in light of OCC's lack of a final decision on the issue. Nor can DFS's characterization of OCC's non-final statements and draft policy document transform those statements and document into a final agency action that is reviewable under the APA. Finally, DFS's attempt to show that OCC's interpretation of its

statutory authority is unreasonable misses the mark: its attempts to distinguish cases in which courts have deferred to OCC's interpretation of "business of banking" are unpersuasive, as is their claim that the National Bank Act must be interpreted in light of later-enacted statutes that purportedly render the term "business of banking" unambiguous.

DFS seeks to challenge an agency action that has not yet occurred, and may not ever occur: the issuance of 5.20(e)(1) Charters to non-depository fintech companies. Because their claims are future-oriented and speculative—and because, in any event, OCC has the authority to issue such charters if it ultimately decides to do so—the Complaint should be dismissed in its entirety.

## ARGUMENT

### A. DFS Lacks Standing Because It Has Not Experienced an Injury-in-Fact

As explained in OCC's opening brief, DFS has not suffered an injury-in-fact sufficient to confer standing. *See* Gov't Br. 6-8. All of the potential harms that DFS identifies are future-oriented and speculative—they are contingent on OCC's issuance of a 5.20(e)(1) Charter, which, depending on the outcome of OCC's ongoing decision-making process in that area, might or might not result in the harms they identify. *See id.* at 7. But speculative harms are insufficient for purposes of establishing an injury-in-fact under the standing analysis. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (injuries must be "likely" as opposed to "speculative"). That lack of concrete, identifiable harm is fatal to DFS's Complaint.

DFS's claim that it possesses standing because "the law governing standing is generous," and because "[s]tates are not normal litigants for the purposes of invoking federal jurisdiction," is unpersuasive. Pl. Br. 6 (citations and quotation marks omitted). State plaintiffs like DFS are not exempt from the requirement that they must identify a non-speculative injury-in-fact. *See Lujan*, 504 U.S. at 561. For example, in *Massachusetts v. EPA*, 549 U.S. 497 (2007), to which DFS cites,

*see* Pl. Br. 6, the environmental harms on which Massachusetts' claims were based had already occurred.  *See* 549 U.S. at 521-22 (environmental changes had "already inflicted significant harms," including "rising seas" that "have already begun to swallow Massachusetts' land").  Here, by contrast, *none* of the potential harms that DFS identifies has occurred, because all of them are premised on OCC's issuance of 5.20(e)(1) Charters to special purpose national banks that do not take deposits—an action that OCC has not yet taken, and whose potential contours are still undefined given that OCC is still in the process of determining whether and how such charters will be issued.  *See* Gov't Br. 3-6.  Put simply, the "special solicitude" described in *Massachusetts v. EPA* "does *not* eliminate the state petitioner's obligation to establish a concrete injury." *Delaware Dep't of Natural Resources & Environmental Control v. Fed. Energy Regulatory Comm'n*, 558 F.3d 575, 579 n.6 (D.C. Cir. 2009); *see also Hull v. Burwell*, 66 F. Supp. 3d 278, 283 n.3 (D. Conn. 2014) (distinguishing *Massachusetts* and observing that "the injury-in-fact requirement remains").  Because DFS has not yet suffered an injury-in-fact, it lacks standing.

DFS's alternative standing theories—that it alleges concrete harms to New York citizens and that the potential issuance of 5.20(e)(1) Charters will have a quantifiable financial impact on the agency, *see* Pl. Br. 7-8, fail for precisely the same reasons.  Absent a final decision from OCC on whether and how 5.20(e)(1) Charters will be issued and, more importantly, the actual issuance of such charters, those harms are purely speculative.  Likewise, DFS's claim that their allegations are well-pleaded, and that it need not prove those claims at this stage in the litigation, is beside the point.  *See id.* at 8-9.  The Complaint fails to establish standing because DFS cannot plead any harms that are "actual or imminent," as opposed to "conjectural or hypothetical," *Lujan*, 504 U.S. at 560, and for that reason the Court lacks subject-matter jurisdiction over this action.

Relatedly, this matter is also not ripe for judicial review. *See* Gov't Br. 8-9. First, because OCC has not yet determined whether or how it will issue 5.20(e)(1) Charters, "the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008). Second, DFS cannot identify "a direct and immediate dilemma" that it faces, *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999), because "[t]he mere possibility of future injury . . . does not constitute hardship," *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003). In its opposition brief, DFS fails to demonstrate that the issues it seeks to adjudicate are anything but speculative, and fails to identify any hardship it would experience absent immediate review of the speculative issues it raises. *See* Pl. Br. 13.

**B.    DFS Fails to State a Claim Under the APA Because OCC Has Not Taken a "Final Agency Action"**

DFS's Complaint also fails to state a claim for which relief may be granted because OCC has not taken a "final agency action" subject to challenge under the APA. Gov't Br. 10-13; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (two-part test for determining whether a final agency action exists). First, neither OCC's public statements nor its draft policy mark the consummation of its decision-making process—indeed, it has not yet determined whether, and under what circumstances, it will make 5.20(e)(1) Charters available to non-depository fintech companies. *See* Gov't Br. 11-12. Second, none of OCC's public statements or its draft policy, either alone or in combination with the 2003 amendment to Section 5.20(e)(1), determines rights or obligations, or has legal consequences. *See id.* at 11-12.

DFS's mischaracterization of OCC's public statements is insufficient to establish the existence of a final agency action. *See* Pl. Br. 9-12. First, DFS points to language in OCC's March 2017 Draft Supplement (ECF No. 10-9) as indicative of a final agency decision, *see* Pl. Br. 9-10— ignoring, among other things, that the document was, by its plain language, a draft. Indeed, in the

4

Explanatory Statement (ECF No. 10-8) issued concurrently with the Draft Supplement, OCC explained that the Draft Supplement was "issue[d] for public comment" and "explains how the OCC *would* evaluate applications from fintech companies" in the context of an "*envisioned* application process." *Id.* at 1, 15 (emphasis added). DFS cannot manufacture a final decision by ignoring both the language in these documents and the context in which they were issued. Nor can it draw a distinction between a purported final decision on the issuance of 5.20(e)(1) Charters and "collateral proceedings" on issues such as the application process to be used. Pl. Br. 10. A decision is final only when it amounts to a "definitive statement of [the agency's] position, determining the rights and obligations of the parties." *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008). No such definitive statement exists here concerning *any* aspect of OCC's potential issuance of 5.20(e)(1) Charters. For example, although, in March 2017, then-Comptroller Curry said that OCC "will be issuing charters to fintech companies," Pl. Br. 11 (quoting Curry Speech (ECF No. 10-10) at 5), he did not assert that OCC would issue fintech companies the specific 5.20(e)(1) Charters about which DFS complains. Similarly, in his July 2017 remarks, Acting Comptroller Noreika made clear that "at this point the OCC has not determined whether it will actually accept or act upon applications from nondepository fintech companies," and further explained that OCC might opt to support fintech innovation through the issuance of other types of charters. Exchequer Speech at 9.

Indeed, DFS cannot downplay the significance of Acting Comptroller Noreika's remarks, which further underscore the lack of final agency action on the issuance of 5.20(e)(1) Charters. *See* Pl. Br. 11-12. DFS mischaracterizes these remarks as "self-serving" and a "*post hoc* litigation posture." *Id.* at 11. In fact, Acting Comptroller Noreika's statement that OCC has not determined whether it will actually accept or act upon applications for 5.20(e)(1) Charters, and might instead

support fintech innovation through other types of charters, is both indicative of the lack of a final agency action and wholly consistent with OCC's statements in documents such as the Draft Supplement and Explanatory Statement. It is, for example, far afield from the situation in *New York v. EPA*, 350 F. Supp. 2d 429 (S.D.N.Y. 2004), cited in DFS's brief, in which the EPA had determined to leave in place pre-existing pesticide "tolerance" levels, and thereafter enforced those levels in its Reregistration Eligibility Decisions. *See id.* at 435-36. Here, OCC has not even committed to issuing 5.20(e)(1) Charters, let alone taken any actions from which legal consequences would flow.

Finally, DFS's claim that that OCC's purported "fintech charter decision" has legal consequences simply because OCC argued for *Chevron* deference in its opening brief is meritless. Pl. Br. 12. OCC's *Chevron* argument was plainly pled in the alternative in the event the Court were to accept DFS's contention that the disparate agency statements they identify amount to a final action. *See* Gov't Br. 13. Because they do not represent the culmination of the agency's decision-making process, and because there are no legal consequences that flow from them, the Court should dismiss DFS's APA claims for failure to state a claim.

**C.     DFS's Facial Challenge to Section 5.20(e)(1) is Untimely**

The Complaint also fails to state a claim because, to the extent it presents a facial challenge to Section 5.20(e)(1), it is time-barred. *See* Gov't Br. 9-10; 28 U.S.C. § 2401. Plaintiffs seek to cast the promulgation of Section 5.20(e)(1) as an "intermediate step" leading to the so-called "fintech charter decision." Pl. Br. 28-29. But that claim fails for at least two reasons. First, as explained above and in OCC's opening brief, there is no final agency decision concerning the issuance of 5.20(e)(1) Charters that DFS may challenge—OCC's decision-making process is ongoing. Accordingly, there are no "intermediate actions" that can be reviewed at this time,

because there is no final action to which they can be tethered. *See* Pl. Br. 29 (citing *Citizens Against Casino Gambling in Erie County v. Chaudhuri*, 802 F.3d 267, 279 (2d Cir. 2015)). Second, "an agency does not reopen a rulemaking or policy determination merely [by] respond[ing] to an unsolicited comment by reaffirming its position." *CTIA-The Wireless Corp. v. Fed. Communications Commission*, 466 F.3d 105, 110 (D.C. Cir. 2006) (citation and quotation marks omitted). DFS does not, and cannot, identify any place in OCC's public statements or draft policy where OCC signaled a willingness to reconsider the validity of its 2003 amendments to Section 5.20(e)(1). Those statements concerned, not the correctness of OCC's interpretation of the scope of its chartering authority, but rather how it should be applied—questions that the agency is still in the process of answering.

### D. OCC's Interpretation of the National Bank Act is Entitled to Deference

In the alternative, even if the Court were to find that DFS had standing to bring its claims, and that OCC had taken a final agency action with respect to the issuance of Section 5.20(e)(1) Charters, OCC's interpretation of the term "business of banking" in the National Bank Act is reasonable and entitled to *Chevron* deference. *See* Gov't Br. 13-20.

DFS's arguments in opposition to this alternative position fare no better. *See* Pl. Br. 14-26. At the threshold, DFS misapprehends the source of OCC's chartering authority. That authority derives from 12 U.S.C. § 27(a), which provides that OCC may grant a charter "[i]f . . . it appears that such association is lawfully entitled to commence the business of banking." Although the term "business of banking" appears elsewhere in the National Bank Act, it is not defined. *See* Gov't Br. 14 (citing relevant provisions). DFS's assertion that OCC's chartering authority resides in 12 U.S.C. § 24(Seventh), and further that that provision defines deposit-taking as integral to the "business of banking," is incorrect. *See* Pl. Br. 3, 14, 24-25. Section 24(Seventh), entitled

"Corporate powers of associations," defines bank powers—it is not the source of OCC's chartering authority—and, in any event, while that provision identifies "receiving deposits" as a banking function, its language does not unambiguously render deposit-taking an essential component of the business of banking.

Further, DFS's attempt to limit the Supreme Court's decision in *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995), to the facts of that case, *see* Pl. Br. 14-16, is unavailing, because those case-specific facts played no part in the analysis that caused the Supreme Court to conclude that the term "business of banking" was ambiguous.  Although *NationsBank* addressed the permissible limits of the term "business of banking" "beyond those specifically enumerated," 513 U.S. at 258 n.2, that context had no bearing on the Court's granting deference to the Comptroller in interpreting this ambiguous term.  DFS's attempt to distinguish *Indep. Cmty. Bankers Ass'n of South Dakota, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 820 F.2d 428 (D.C. Cir. 1987), likewise falls short.  Again, the factual context played no role in the deference given by the D.C. Circuit to the Comptroller's interpretation that the "business of banking" allowed for the chartering of a limited purpose national bank.  Contrary to DFS's attempts to distinguish the case, Pl. Br. 28, the D.C. Circuit placed no weight on the fact, mentioned in passing, that the national bank intended to offer limited deposit-taking and other services to the "local community" as minimally permitted by a state statute.

Nor can DFS undermine OCC's reasonable interpretation by reference to "the overall scheme of federal banking law."  Pl. Br. 17-21.  Because the National Bank Act predates every other federal banking statute, DFS's theory, if adopted, would demand reconsideration of existing interpretations of the National Bank Act upon subsequent passage or amendment of other banking statutes.  This is clearly untenable.  In *Independent Insurance Agents v. Ludwig*, 997 F.2d 958, 962

8

(D.C. Cir. 1993), the D.C. Circuit rejected similar arguments that the OCC's interpretation of Section 92 of the National Bank Act must be harmonized with a later-enacted provision of the BHCA.  Notwithstanding that Congress had intended that the BHCA amendment "parallel" Section 92, the D.C. Circuit deferred to an OCC Section 92 interpretation that was directly contrary to the Federal Reserve Board staff's interpretation of the "parallel" BHCA provision.  *Id.*  The D.C. Circuit rejected the notion that the 1982 BHCA amendment, as interpreted by the Federal Reserve Board, should "illuminate" the intention of the 1916 Congress.  *Id.*  The court of appeals cited approvingly the conclusion of the district court that "[t]he two provisions were enacted over sixty-five years apart and deal with two different types of banking institutions, each subject to a distinct set of laws and regulations administered by separate agencies." *Id.* (quoting *Nat. Ass'n of Life Underwriters v. Clarke,* 776 F. Supp. 1162, 1171 (D.D.C. 1990), *rev'd on other grounds by Indep. Ins. Agents of Am., Inc. v. Clarke*, 955 F.2d 731, 732 (D.C. Cir. 1992)).  The court also cited to an earlier case where it had rejected an argument that the OCC was obligated to follow the BHCA.  "[T]he Comptroller derived his authority solely under the [National Bank Act], and it was his responsibility to determine issues under that Act, not under the BHCA." *Id.* (citing *Am. Ins. Ass'n v. Clarke*, 865 F.2d 278 (D.C. Cir. 1988)).

      OCC has reasonably interpreted the term "business of banking" to mean that the conduct of one of three "core activities" suffices to make an applicant eligible for a national bank charter.  That interpretation is grounded in relevant statutes and has been endorsed by case law.  In *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987), the Supreme Court deferred to OCC's interpretation of the ambiguous term "the general business of each national banking association" in the locational restrictions contained in 12 U.S.C. § 81 to mean only "core banking functions," and to define those core banking functions by reference to the definition of a "branch" contained in 12 U.S.C. § 36—

9

"a place at which deposits are received, or checks paid, or money lent." 479 U.S. at 409. In promulgating Section 5.20(e)(1), OCC reasonably consulted the same source, Section 36, to inform its determination of the minimum "core activities" that satisfy "the business of banking" for chartering purposes. *See* Gov't Br. 19-21. OCC's Final Rule is consistent with that interpretation: "A special purpose bank that conducts activities other than fiduciary activities must conduct at least one of the following three core banking functions: receiving deposits; paying checks; or lending money." 12 C.F.R. § 5.20(e)(1).[1]

### E. DFS Fails to State a Valid Tenth Amendment Claim

Finally, DFS fails to state a Tenth Amendment claim. *See* Gov't Br. 23. At bottom, its Tenth Amendment argument is derivative of its argument that OCC is acting outside the scope of its federal authority in a way that trenches on authority reserved to the states. *See* Pl. Br. 29-30. If, as DFS argues, OCC were attempting not to charter a national bank but to supersede traditional state bank corporate chartering authority, such a claim might be plausible. But because OCC's potential course of action for issuing 5.20(e)(1) Charters merely envisions a federal charter co-

---

[1] Again misidentifying the source of OCC's chartering authority, DFS wrongly accuses OCC of downplaying two cases that purportedly held that OCC lacks authority under Section 24(Seventh) to charter non-depository institutions, and that DFS claims "remain undisturbed and thus good law." Pl. Br. 26 n.9. In fact, the first case, *Independent Bankers Association of America v. Conover*, 1985 U.S. Dist. LEXIS 22529 (M.D. Fla. 1985), is not binding on this Court, was vacated before final judgment was entered, and both predates and is at odds with the reasoning of the Supreme Court in *NationsBank* and the D.C. Circuit in *Independent Community Bankers Association*. As for the second case, the Third Circuit in *National State Bank of Elizabeth, N.J. v. Smith*, 591 F.2d 223 (3d Cir. 1979), vacated the district court's ruling based on the intermediate amendment to Section 27(a), which allowed OCC to charter national trust banks. *See id.* at 231-32. The Third Circuit therefore never addressed the validity of the district court's pre-amendment determination that OCC lacked authority to charter an institution that did not engage in *any* of the banking powers enumerated in Section 24(Seventh). Accordingly, and contrary to DFS's claims, neither the Third Circuit's decision in *National State Bank* nor even the underlying district court case, 1977 U.S. Dist. LEXIS 18184 (D.N.J. Sept. 16, 1977), stand for the proposition that deposit-taking is a prerequisite to receiving an OCC charter.

existing with state-chartered institutions, the agency is acting within the authority of the Commerce Clause and the Necessary and Proper Clause. *See, e.g., Watters v. Wachovia Bank, N. A.*, 550 U.S. 1, 22 (2007).

## CONCLUSION

For the foregoing reasons, and those set forth in OCC's opening brief, the Complaint should be dismissed in its entirety.

Date:   New York, New York
        October 6, 2017

                           Respectfully submitted,

                           JOON H. KIM
                           Acting United States Attorney for the
                           Southern District of New York
                           *Attorney for Defendants*

By:   /s/ Christopher Connolly
      CHRISTOPHER CONNOLLY
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel.: (212) 637-2761
      Fax: (212) 637-2786
      christopher.connolly@usdoj.gov

AMY S. FRIEND
Senior Deputy Comptroller and Chief Counsel
CHARLES M. STEELE
Deputy Chief Counsel
KAREN SOLOMON
Deputy Chief Counsel
GREGORY F. TAYLOR
Assistant Director of Litigation
DOUGLAS B. JORDAN
PETER C. KOCH
ASHLEY W. WALKER
GABRIEL A. HINDIN
Office of the Comptroller of the
 Currency
400 7th Street S.W.
Washington, D.C. 20219